L. E. OVERSTREET v. W. B. WHIDDON, as Sheriff.

177 So. 701.

Division A.

Opinion Filed November 13, 1937.

Rehearing Denied January 8, 1938.

*Zach H. Douglas* and *James H. Bunch,* for petitioner;

*Cary D. Landis,* Attorney General, *Roy Campbell,* Assistant Attorney General, *J. C. Adkins,* State Attorney, and *J. B. Hodges,* for Respondent.

BUFORD, J.—This is an original proceeding in habeas corpus.

Petitioner attacks eleven informations, nine of which are alike as to alleged infirmities. It is not needful to quote these informations as the alleged infirmity appears in the manner in which the alleged date of the occurrence of the offense is stated. That part of each of such nine informations is as follows:

"That J. C. Sale and L. E. Overstreet of the County of Levy and State of Florida, on the 6th day of June, in the year of our Lord one thousand nine hundred and thirty-six in the County of Levy and State of Florida, or at some time after June 2nd, 1936, and on or before the 6th day of June, A. D. 1936, the exact time being unknown."

Then follow the allegations charging the offense.

The contention of the Relator is based on the enunciations found in the case of Morgan v. State, 51 Fla. 76, 40 Sou. 828, and authorities there cited. In that case it was alleged that the offense was committed "on or about the 27th day of June, A. D. 1905." In that case it was held:

"A date upon which the alleged crime was committed must be alleged in the indictment with definiteness and certainty whether such specific date be proved at the trial or not."

Mr. Justice PARKHILL prepared the opinion for the Court. In the opinion the question was exhaustively and learnedly treated and it concludes with the following observation:

"If it appears illogical to hold that the precise day must be stated in the indictment, but that the offense may be proved to have been committed on any other day not so remote that the statute of limitations would bar the prosecution, it is sufficient to say that it was so at common law. 'A time,' says Clark, 'must always be stated at common law, but any time before the finding of the indictment and within the period of limitation may be given and a different time may be shown at the trial.' Clark's Crim. Prac. 238. The indictment should allege a day certain to show that the prosecution is not barred by the statute of limitations. United States v. Winslow, *supra*. This rigid rule of common law has been abrogated in England by statute 14 and 15 Victoria, and it has been thought necessary to change the

common law in this respect by statutes in many of the States of our Union. We do not feel justified in following the courts of Connecticut in their modification of the common law until our Legislature has clearly abrogated the common law rule in the strictness required in alleging the time of the commission of an offense. This question was before this Court in the case of Morgan v. State, reported in 13 Fla. 671, and it was there said: 'Charging that the offense was committed "on or about" a certain day has been universally held to be indefinite, and fatal upon demurrer or motion to quash * * * If no time or place be stated, or if the time or place stated be uncertain or repugnant, the defendant may demur or move in arrest of judgment, for the defect is not cured by verdict. The defendant is moreover entitled to be informed of the time when, and the place where, the offense is alleged to have been committed in order that he may be enabled to prepare to meet the charge.' The court in that case said 'what may be the effect upon this point of the statute relating to technicalities in indictments it is unnecessary to determine here; we desire only to call attention to a very loose and dangerous practice.'

"In arriving at our conclusion herein we have not overlooked the provisions of Section 2893, Revised Statutes of 1892, which provides that 'no indictment shall be quashed or judgment be arrested or new trial be granted on account of any defect in the form of the indictment or of misjoinder of offenses or for any cause whatsoever, unless the court shall be of the opinion that the indictment shall be so vague, indistinct and indefinite as to mislead the accused and embarrass him in the preparation of his defense or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense.' We do not think that this statute abrogates the common law rule in

force here that a date upon which the alleged crime was committed must be alleged in the indictment with definiteness and certainty whether such specific date be proved at the trial or not."

The allegation as found in the informations satisfies every reason advanced in that opinion for holding that the allegations of date in an indictment or information must be definite and certain. The dates used placed the commission of the offense within the period of four definite successive days, or within the period of ninety-six consecutive hours, all of which days and hours were clearly within the period of the statute of limitation. The allegation is entirely different from the allegation of "on or about the 6th day of June, 1937, because there is no fixed rule by which we may determine what period of time is covered by that allegation. The allegation used in this information leaves no range for conjecture. The defendant is definitely advised as to the time when he is alleged to have committed the alleged offense. He is not subjected to surprise and may prepare his defense having regard to the time fixed in the information. It may be that the State by stating the time definitely during which the offense is alleged to have been committed has as effectually confined itself to proof within the time alleged as it would have by alleging the offense to have been committed on one particular day and then filing a bill of particulars designating four consecutive days, including the day alleged in the information as the period within which it would prove the offense to have been committed.

As against this attack on the nine informations referred to, we hold them insufficient.

One of the other informations charges that:

"The said J. C. Sale, as County Judge aforesaid, and the

said L. E. Overstreet, as Supervisor of Registration aforesaid, constituting and comprising two members of the County Canvassing Board of Primary Elections, after the returns, including tally sheets or tally books, of a primary election held in each and every precinct of said County and State on June 2, 1936, had been received by the County Judge and the Supervisor of Registration aforesaid, and by virtue of the office held by each of them, they were each charged, among other things, with the duty of using and exercising and causing to be used and exercised all proper, reasonable and effective means, and all means within the power of each of them as County Judge aforesaid, and as Supervisor of Registration aforesaid, of especially preserving the returns, including the tally sheets or tally books, of and for each and every precinct in said County, so that the returns, including the tally sheets or tally books, would show the actual vote cast in each and every precinct for each and every candidate voted for in said election, as recorded by the Inspectors and Clerks for each Precinct, and notwithstanding the office held by each of them, and the duty of each of them as such officer aforesaid, the said J. C. Sale as County Judge aforesaid, and the said L. E. Overstreet as Supervisor aforesaid, did willfully, carelessly, and in a grossly negligent manner fail and omit to perform the duties aforesaid, enjoined by law upon them and each of them aforesaid, as public officers, in this, to-wit: After the returns, including the tally sheets or tally books, of the primary election held in each and every precinct of said County and State as aforesaid, were received by the County Judge and Supervisor of Registration as such, that the said County Judge and said Supervisor of Registration did willfully, carelessly and in such a grossly negligent manner permit the tally sheets or tally books for election precinct No.

10, known as Judson, together with other records of said election held in said precinct, to be and remain in a place where the same could be destroyed, mutilated, defaced, erased and altered."

These allegations are insufficient to charge any offense, because they fail to point out, with any degree of certainty, how or in what manner the alleged negligence was effectuated. The allegations do not advise the defendant as to what act he performed, or what act he failed to perform upon which the State bases its allegation of willful negligence. The allegations in effect state that the defendant did willfully, carelessly and in such grossly negligent manner permit the tally sheets or tally books, and other records of precinct No. 10, known as Judson, to be and remain in a place where the same could be destroyed, mutilated, defaced, erased and altered. The allegation does not state what sort of place the records were permitted to be placed and remain in. There is practically no place where records could be permitted to be placed or remain that is so secure that they could not be destroyed, mutilated, defaced, erased and altered. So far as the allegations of this information are concerned, the defendant is not advised whether the State expects to prove that he left and permitted the records to remain in some open room, corridor or hallway where the public had access, or that he locked them in some secure vault to which other people may have had access.

For the reasons stated, this information charged no offense.

The other, and last, information which we are asked to consider charges that the defendant, with other members of and constituting the County Canvassing Board of Primary Elections:

"After the returns of a primary election held in each and

every precinct of said County and State on June 2, 1936, had been received by the County Judge and Supervisor of Registration aforesaid, did willfully refuse to meet at the office of the Supervisor of Registration on or before the third day after said primary election held on June 2, 1936, and public canvass the vote given for the several nominations and the persons as shown, according to the returns then on file in the office of the said County Judge and Supervisor of Registration."

It appears to be the contention of the Relator that this information charges no offense against the laws of the State of Florida for two reasons, the second of which applies to all the informations and will be hereinafter discussed, and the other is that Section 5880 R. G. S., 8143 C. G. L., which provides as follows:

"Any member of the county canvassers of election who shall willfully violate any of the provisions of law relating to canvassing the result of any election shall be punished by fine not less than two hundred and fifty dollars nor more than one thousand dollars, or imprisonment in the State penitentiary not more than three years," is not applicable to the members of the County Canvassing Board of Primary Elections.

Section 8143 C. G. L. was enacted originally as Section 62 of Chapter 4328, Acts of 1895. The title to that Act was as follows:

"AN ACT to Provide for the Registration of all Legally Qualified Voters in the Several Counties of the State, and to Provide for General and Special Elections and for the Returns of Elections."

Section 62 of Chapter 4328, *supra,* was amended by Section 3 of Chapter 4699, Acts of 1899. The title to that Act was:

"An Act *to* Amend Sections 26, 61 and 62 of the Laws of Florida, Chapter 4328, Entitled 'An Act to Provide for the Registration of all Legally Qualified Voters in the Several Counties of the State, and to Provide for General and Special Elections and for the Returns of Elections."

In the revision the entire Section 3 amending Section 62, *supra,* was not included in Section 5880.

Section 350 R. G. S., 407 C. G. L., which was Section 46 of Chapter 6469, Acts of 1913, as amended by Chapter 13761, Acts of 1929, provides as follows:

"On the third day after any primary election, or sooner, if the returns shall have been received, it shall be the duty of the county judge and supervisor of registration to meet at the office of the said supervisor of registration and take to their assistance the chairman or other members of the board of county commissioners; and in the case of absence, sickness, refusal to act, or other disability of the county judge or supervisor of registration, another member of the board of county commissioners who shall be designated by the chairman of said board, shall act in his place, who shall constitute and be the county canvassing board of primary elections; and they shall proceed publicly to canvass the vote given for the several nominations and the persons as shown by the returns then on file in the office of such county judge and supervisor of registration. Such canvass shall be made solely, exclusively and entirely from the returns and certificates of the inspectors in each election district, as signed and filed by them with the county judge and supervisor of registration, respectively, and in no case shall the board of county canvassers change or vary in any manner the number of votes cast for the candidates, respectively, in any polling place in the county, as shown by the returns of such polling place. Provided that all returns shall be

made to the said county canvassing board on or before the said third day after such primary election, and if not so returned the vote of all missing precincts shall be ignored and the results as shown by the returns then on file shall be certified as in this law provided."

. · This question has been determined adversely to the contention of the Relator in the case of State, *ex rel*. Gandy, v. ·Page, 125 Fla. 348, 169 Sou. 850, in which we held:

"The primary election laws are a part of the general election machinery of the State. Under their present effect as interpreted by this Court, no candidate is eligible to have his name printed on the general election ballot as a candidate for elective office in opposition to major parties' candidates, if the latter have been nominated in the general June biennial primary elections. Primary elections are, therefore, the beginning of the operation of the general election laws that must ultimately result in the actual choice of our elective public officers. As such our primary election law amounts to a policing and regulation of the method and means by which the political activities of the qualified electors defined by Section 1 of Article VI of the Constitution (who are *bona fide* members of the recognized major political parties of the State) are ultimately exerted in the final choice of elective officers."

And again, in that opinion, it was said:

"Under Section 26 of Article III the Legislature is required to pass laws regulating elections and prohibiting under adequate penalties all undue influence thereon from power, bribery, tumult or other improper practice. As has been held by this Court, such section of the Constitution contemplates laws regulating primary elections as well as general elections because of the inevitable relationship of the two classes of elections to each other."

And so it is that while at the time Chapters 4699, *supra,* and 4328, *supra,* were enacted there was no statute authorizing the holding of primary elections, nevertheless, when primary elections were provided for by statute and became a part of the general election system of the State this statutory provision became applicable to offenses committed by election officers in connection with primary elections.

The second contention as to this last mentioned information is applicable to each and every of the informations and challenges the title of Chapter 13761, Acts of 1929, as being insufficient to include within its purview the provisions of Section 11 of the Act.

Section 11 of Chapter 13761, *supra,* was an amendment of Section 350 R. G. S. (1920), Section 704 C. G. L. of Fla. 1927. The title of the Act was, in part, as follows:

"And amending Sections 356, 359, 361, 386, 387, 400, 401, 405, 406, 407, 408, 409, 411 and 421, Compiled General Laws of Florida, 1927, being Sections 300, 303, 305, 329, 330, 343, 344, 348, 349, 350, 351, 352, 354 and 364, Revised Statutes of Florida, 1920, Relating to Primary Elections Providing for a Second Primary Election, * * *

Section 350 R. G. S., 407 C. G. L., has been hereinbefore quoted. We will not here again quote it.

We may trace the provisions of this section of the Act from its origin in Section 46 of Chapter 6469, Acts of 1913, with its successive amendments down to date. Chapter 6469, Acts of 1913, was entitled:

"An Act to Provide for and Regulate Primary Elections." This title was sufficient to embrace all matters in connection with the holding, and in every way completing and declaring the result, of the primary election.

Section 46 of the Act was carried forward and reenacted as Section 350 R. G. S. As such section of the Revised

General Statutes, it was amended by the Act of 1929 as hereinbefore stated. This section of the Act does not offend against Section 16, Article III, of the Constitution.

For the reasons stated, the motion to quash the return is denied; the return is held sufficient and the Relator is remanded to the custody of the Respondent.

So ordered.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN, J., concur in the opinion and judgment.

CHAPMAN, J., not participating.